IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CR-94-D-1
No. 4:20-CV-65-D

DARYL BERNARD TYSON,          )
                              )
        Petitioner and Defendant,  )
                              )
    v.                        )          **ORDER**
                              )
UNITED STATES OF AMERICA,     )
                              )
            Respondent.       )

On April 21, 2020, Daryl Bernard Tyson ("Tyson" or "petitioner") moved pro se under 28

U.S.C. § 2255 to vacate, set aside, or correct his 288-month sentence [D.E. 81]. On September 25,

2020, the government moved to dismiss Tyson's section 2255 motion [D.E. 91] and filed a

memorandum in support [D.E. 92]. On October 1, 2020, the court notified Tyson of the motion to

dismiss, the consequences of failing to respond, and the response deadline [D.E. 93]. See Roseboro

v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On October 30, 2020, Tyson filed a

memorandum in support of his section 2255 motion [D.E. 95]. On June 2, 2021, Tyson moved pro

se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, §

603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 96]. On

March 10, 2022, Tyson, through counsel, filed a memorandum in support [D.E. 101]. On April 15,

2022, the government responded in opposition [D.E. 105] and submitted documents in support [D.E.

106]. As explained below, the court grants the government's motion to dismiss, dismisses Tyson's

section 2255 motion, and denies Tyson's motion for compassionate release.

On January 10, 2011, pursuant to a plea agreement, Tyson pleaded guilty to conspiracy to possess with intent to distribute more than 100 grams of heroin (count one) and money laundering by concealment (count three). See [D.E. 22]; Plea Agr. [D.E. 23]. On January 30, 2012, the court held Tyson's sentencing hearing, resolved Tyson's objections, and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 41]; [D.E. 52]. The court calculated Tyson's offense level to be 33, his criminal history category to be VI, and his advisory guideline range for count one to be 235 to 293 months' imprisonment and for count three to be 235 to 240 months' imprisonment. See PSR ¶¶ 57–60. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Tyson to 288 months' imprisonment on count one and 240 months' concurrent imprisonment on count three, for a total term of 288 months' imprisonment. See [D.E. 53] 2. Tyson did not appeal.

On March 29, 2016, Sherri R. Alspaugh entered an appearance on Tyson's behalf "for the limited purpose of representation as set forth within Standing Order 15-SO-2." [D.E. 64]. Standing Order 15-SO-2 charged counsel with determining whether Johnson v. United States, 576 U.S. 591 (2015), affected Tyson's sentence. Alspaugh determined that Johnson did not affect Tyson's sentence because his career offender status did not affect his offense level calculation and moved to withdraw. See [D.E. 65]; [D.E. 95-2] 1–2; PSR ¶ 53. Tyson, however, told Alspaugh that the career offender enhancement affected his criminal history category. See [D.E. 95] 8. Alspaugh responded that Tyson had two controlled substance offenses and that the court properly found him a career offender. See id. at 9–10; PSR ¶¶ 17, 20. The court granted Alspaugh's motion to withdraw. See [D.E. 66].

On November 6, 2019, Laura S. Wasco entered an appearance on Tyson's behalf for the limited purpose of determining whether Tyson might qualify for relief under the First Step Act. See [D.E. 71]. Wasco determined that Tyson did not qualify for such relief and moved to withdraw. See [D.E. 72]. The court allowed Wasco to withdraw. See [D.E. 73]. On January 23, 2020, Tyson moved for appointment of counsel to represent him under the First Step Act. See [D.E. 74]. On February 27, 2020, the court denied Tyson's motion. See [D.E. 75].

II.

In Tyson's section 2255 motion, Tyson argues that (1) the court erred in applying the career offender enhancement because his discharging a weapon into occupied property conviction is not a career offender predicate, and (2) he received ineffective assistance of post-conviction counsel because Alspaugh failed to make a motion concerning this career offender predicate under Johnson. See [D.E. 81] 4–7; [D.E. 95] 2–16.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551

3

U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In

reviewing a section 2255 motion, the court is not limited to the motion itself. The court may

consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11

F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See,

e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354,

359–60 (4th Cir. 2013).

The post-conviction waiver in Tyson's plea agreement bars Tyson's first claim. In the

waiver, Tyson agreed

> [t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to
> appeal whatever sentence is imposed, including any issues that relate to the
> establishment of the advisory Guideline range, reserving only the right to appeal from
> a sentence in excess of the applicable advisory Guideline range that is established at
> sentencing, and further to waive all rights to contest the conviction or sentence in any
> post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting
> an appeal or motion based upon grounds of ineffective assistance of counsel or
> prosecutorial misconduct not known to the Defendant at the time of the Defendant's
> guilty plea.

Plea Agr. ¶ 2(c). In light of Tyson's Rule 11 proceeding, the waiver is enforceable. See United

States v. Copeland, 707 F.3d 522, 528–30 (4th Cir. 2013); United States v. Davis, 689 F.3d 349,

354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012);

United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). Tyson's first claim falls within the waiver.

Cf. United States v. Goodall, 21 F.4th 555, 561–62 (9th Cir. 2021); United States v. Archie, 771

F.3d 217, 223 (4th Cir. 2014). Accordingly, the waiver bars Tyson's first claim.

Alternatively, Tyson did not appeal, and he procedurally defaulted his career offender

guideline claim by failing to raise it on direct appeal. Thus, the general rule of procedural default

bars Tyson from presenting this claim under section 2255. See, e.g., Massaro v. United States, 538

U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit,

4

703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001).

Furthermore, Tyson has not plausibly alleged "actual innocence" or "cause and prejudice" resulting

from the alleged error about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman

v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United

States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States

v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Accordingly, the claim fails.

Alternatively, Tyson argues that the court erred in its advisory guideline calculation by

finding him a career offender. Tyson, however, cannot use section 2255 to attack his advisory

guideline range retroactively. See, e.g., United States v. Foote, 784 F.3d 931, 935–36 (4th Cir.

2015); United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999) ("Barring extraordinary

circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a §

2255 proceeding.").

Next, Tyson alleges that he received ineffective assistance of post-conviction counsel (i.e.,

Alspaugh) because she failed to file a motion challenging one career offender predicate under

Johnson. "The Sixth Amendment entitles criminal defendants to the effective assistance of

counsel—that is, representation that does not fall below an objective standard of reasonableness in

light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam)

(quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a

criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lafler v.

Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012). It does not,

however, extend to collateral review where ineffective assistance of trial counsel is not at issue. See

Davila v. Davis, 137 S. Ct. 2058, 2062 (2017); Martinez v. Ryan, 566 U.S. 1, 11 (2012); Wallace

v. Sexton, 570 F. App'x 443, 454 (6th Cir. 2014) (unpublished). Thus, Tyson's claim fails.

5

Alternatively, Beckles v. United States, 137 S. Ct. 886, 896 (2017), dooms Tyson's reliance on Johnson to seek to attack his advisory guideline calculation. See, e.g., United States v. Mack, 855 F.3d 581, 584–85 (4th Cir. 2017); United States v. Lee, 855 F.3d 244, 246–47 (4th Cir. 2017). Post-conviction counsel's failure to make a baseless argument is not deficient performance. See Knowles v. Mirzayance, 556 U.S. 111, 127–28 (2009).

After reviewing the claims presented in Tyson's motion, the court finds that reasonable jurists would not find the court's treatment of Tyson's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

### III.

Tyson moves for compassionate release under the First Step Act. See [D.E. 96, 101]. On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence

6

under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and

must ensure that a sentence reduction is "consistent with applicable policy statements" of the United

States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially

parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the

safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's

application notes provide examples of extraordinary and compelling reasons, including: (A) serious

medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious

deterioration in physical and mental health due to aging and having served at least 10 years or 75%

of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1.    Extraordinary and Compelling Reasons.—Provided the defendant meets the
      requirements of subdivision (2), extraordinary and compelling reasons exist
      under any of the circumstances set forth below:

      (A) Medical Condition of the Defendant.—

            (i) The defendant is suffering from a terminal illness (i.e., a serious and
                advanced illness with an end of life trajectory). A specific prognosis
                of life expectancy (i.e., a probability of death within a specific time
                period) is not required. Examples include metastatic solid-tumor
                cancer, amyotrophic lateral sclerosis (ALS), end-stage organ
                disease, and advanced dementia.

            (ii) The defendant is—

                  (I) suffering from a serious physical or medical condition,

                  (II) suffering from a serious functional or cognitive impairment,
                       or

7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

8

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Tyson applied to the warden at FCC Yazoo City for compassionate release, and the warden denied his request.. See [D.E. 96] 2; [D.E. 96-2]; [D.E. 101-1]. Moreover, the government has not invoked section 3582's exhaustion requirement. Cf. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021). Accordingly, the court addresses Tyson's motion on the merits.

Tyson seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Tyson cites the COVID-19 pandemic, his medical conditions (hypertension and being

9

overweight), his new advisory guideline range, and his rehabilitation. See [D.E. 96]; [D.E. 101]

5–12. As for the "medical condition of the defendant" policy statement, the policy statement

requires that the defendant be "suffering from a serious physical or medical condition . . . that

substantially diminishes the ability of the defendant to provide self-care within the environment of

a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.

n.1(A)(ii). Tyson argues that his hypertension and being overweight place him at heightened risk

of serious infection from COVID-19. See [D.E. 96] 3–4; [D.E. 96-3] 1–6; [D.E. 101] 7–9; [D.E.

101-2]. Beyond arguments about the spread of COVID-19 within BOP generally and his facility

specifically, however, Tyson does not argue he is unable to manage his medical conditions while

incarcerated or that the BOP is not treating his hypertension.

Tyson has received three doses of COVID-19 vaccines, which greatly diminishes his risk

of serious infection from COVID-19, even in light of his medical conditions. See [D.E. 101] 9;

[D.E. 101-2] 9; [D.E. 105-1]; see, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at

*2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425,

at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out

reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19

complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar.

3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1

(9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021)

("And following full vaccination, it is now well understood, both the likelihood of contracting

COVID-19 and the associated risks should one contract the virus are significantly reduced" so that

"an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United

States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that

10

being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), petition for cert. filed, No. 21-6594 (U.S. Dec. 15, 2021); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Moreover, on February 11, 2021, Tyson had a COVID-19 infection; therefore, he now has natural antibodies from COVID-19. See [D.E. 96-3] 5; [D.E. 106] 60. The natural antibodies further reduce Tyson's risk. See Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021). Accordingly, reducing Tyson's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Tyson's health conditions, Tyson's rehabilitation efforts, and Tyson's new advisory guideline range are extraordinary and compelling reasons under section 3582(c)(1)(A).[2] Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the wide availability of COVID-19 vaccines greatly diminishes the risk to Tyson from COVID-19 whether he is in prison or not. See,

---

[2] The court assumes without deciding that Tyson's new advisory guideline range is 151 to 188 months' imprisonment. See [D.E. 96] 15.

11

e.g., Jacques, 2022 WL 894695, at *2; Scalea, 2022 WL 795425, at *1; Shettler, 2022 WL 620311, at *4; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. And Tyson does not offer a release plan. Moreover, and in any event, the section 3553(a) factors counsel against reducing Tyson's sentence. See Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Tyson is 48 years old and is incarcerated for conspiracy to possess with intent to distribute more than 100 grams of heroin and money laundering by concealment related to drug trafficking and an escort scheme. See PSR ¶¶ 1–14. After serving a 10-year sentence for conspiracy to distribute cocaine base and possession with intent to distribute heroin, Tyson was released from federal prison in December 2006. See id. ¶ 20. According to Tyson's ex-girlfriend, Tyson's first trip to federal prison taught Tyson how to run a more effective drug-trafficking business. See id. ¶ 11. With Tyson's new-found skills, Tyson sold approximately 3.18 kilograms of heroin from 2008 to October 7, 2010. See id. ¶ 14. Sadly, Tyson's serious criminal conduct was nothing new. Tyson's criminal history reflects a long-term commitment to violence and serious drug dealing. See id. ¶¶ 8–21. Before his latest federal conviction, Tyson was convicted of discharging a weapon into occupied property, felony sell and deliver cocaine, fictitious information to an officer (two counts), conspiracy to distribute cocaine base (crack), and possession with intent to distribute heroin. See id. ¶¶ 16–20. During his first term of federal incarceration, Tyson incurred an infraction for fighting with other inmates. See id. ¶ 20. Tyson also has a poor record on supervision. After all, he committed the offenses for which he is currently incarcerated while on federal supervised release. See id. ¶¶ 20, 23.

Case 4:10-cr-00094-D   Document 109   Filed 04/25/22   Page 12 of 14

Tyson has made some positive efforts during his second trip to federal prison. See [D.E. 101] 10–12. For example, Tyson has completed educational and vocational training courses, including multiple courses in food service and hospitality. See id. at 10–11; [D.E. 101-3]. Tyson also has completed programs related to drug abuse. See [D.E. 101] 11; [D.E. 101-3] 4.

The court must balance Tyson's rehabilitation efforts, his latest federal conviction, his terrible criminal history, his poor record on supervision, the need to punish him, his new advisory guideline range, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Tyson's exposure to COVID-19, his medical conditions, the changes in the law, and Tyson's new advisory guideline range. The court recognizes Tyson has a supportive family. See [D.E. 101] 11; [D.E. 101-4]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Tyson's arguments, the government's persuasive response, the need to punish Tyson for his serious criminal behavior, to incapacitate Tyson, to promote respect for the law, to deter others, and to protect society, the court denies Tyson's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 91], DISMISSES petitioner's section 2255 motion [D.E. 81], DENIES petitioner's motion for compassionate release

13

[D.E. 96], and DENIES a certificate of appealability for the section 2255 motion.  The clerk shall
close the case.

SO ORDERED.  This 25 day of April, 2022.

JAMES C. DEVER III
United States District Judge